UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON-SALEM DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| Steven P. Hambacher, | ) | Case No. 04-51991 |
| | ) | |
| Debtor. | ) | |
| —————————————— | ) | |
| | ) | |
| Steven P. Hambacher, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adv. Pro. No. 04-6065 |
| v. | ) | |
| | ) | |
| ASC, Wachovia Bank, N.A., Citibank, | ) | |
| N.A. (NY State), Great Lakes Educational | ) | |
| Loan Services, Inc., and Sallie Mae | ) | |
| Servicing, | ) | |
| | ) | |
| Defendants. | ) | |
| —————————————— | ) | |

MEMORANDUM OPINION AND ORDER

This matter came on for trial on October 25, 2005, in Winston-Salem, North Carolina, upon the Debtor's Complaint to determine the dischargeability of certain student loan obligations. John A. Meadows appeared on behalf of the Debtor and Anna Shedden Gorman appeared on behalf Educational Credit Management Corporation ("ECMC"), the successor-in-interest to the Defendants. After considering the evidence on the record and the arguments of counsel, the court makes the following findings of fact and conclusions of law:

FINDINGS OF FACT

The Debtor incurred the debts at issue in this adversary proceeding while attending Appalachian State University ("ASU") in Boone, North Carolina. The Debtor attended ASU from January, 1994 until August, 1998. Prior to attending ASU, the Debtor worked for IBM,

Inc., for twelve years.  The Debtor was injured while working for IBM and was no longer able to continue in his previous capacity.  As such, the Debtor entered ASU to prepare for a different career.  While at ASU, the Debtor earned a bachelor's degree in political science and a master's degree in public administration.  To fund his education and living expenses while in school, the Debtor took out student loans (the "Student Loans").  The Debtor does not dispute the amount or validity of the Student Loans.  At the time that the Debtor filed this bankruptcy petition, the Debtor indicated that the Student Loans totaled $73,395.

The Debtor testified that, after graduating from ASU, the Debtor applied for between 600 and 1,000 jobs in public administration.  As a result of these applications, the Debtor received twelve interviews and no offers for employment.  In August, 2000, the Debtor entered Guilford Technical Community College ("GTCC").  While attending GTCC, the Debtor earned an associates degree in computer information systems.  The Debtor completed his course of study at GTCC and, in 2003, began working for the North Carolina Department of Transportation ("NCDOT") as a transportation technician.  The Debtor was employed in this job at the time of trial.

As part of a stipulation submitted by the parties prior to trial, the Debtor submitted an amended statement of income and expenses.  The Debtor has three sources of income.  First, the Debtor's job with the NCDOT provides net monthly income of $2,255 per month.  Second, the Debtor receives $400 per month from a private disability insurance policy.  The Debtor must make quarterly payments of $121 to maintain this income.  After deducting the premium amount, the Debtor receives $360 per month from this private disability insurance.  Finally, the Debtor is receiving approximately $1,400 per month in Social Security disability payments.  The Debtor has informed the Social Security Administration ("SSA") that he is no longer entitled to the

payments but the payments have yet to cease.  As such, the payments are likely to be stopped by

the SSA and it is possible that an action to recover the overpayment will be commenced.  While

the Debtor is currently receiving a total net income of $4,015 per month, the court will not

include the Social Security payments when considering the Debtor's future income.  Therefore,

for the purposes of this adversary proceeding, the court finds that the Debtor's prospective net

monthly income is $2,615 per month.

The Debtor is a 48 year old single male with no dependants and lists average monthly

expenses of $3,755.  The Debtor arrived at this figure by examining his bank statements from

September, 2004 to August, 2005.  The Debtor owns a three-bedroom home.  While the

mortgage requires payments of $845 per month, the Debtor pays an average of $912 per month

on his mortgage.  The Debtor testified that he is making additional payments because he would

like to have this mortgage paid when he retires in fifteen years.  The Debtor lists utility expenses

that average $131 per month.  The Debtor has two telephone services.  For his home service, the

Debtor pays an average of $71 per month.  For his cellular service, the Debtor pays an average of

$91 per month.  The Debtor pays $62 per month for satellite television and $52 per month for

broadband internet access.  The Debtor owns three vehicles.  The first, a Chevrolet Suburban,

has payments of $510 per month.  The second, a motorcycle, has payments of $200 per month.

The third vehicle, an unidentified vehicle purchased in January, 2005, has payments of $314 per

month.  The Debtor maintains insurance on these three vehicles.  In addition, although he is

under no legal obligation to do so, the Debtor pays insurance premiums on his ex-wife's vehicle.

In total, the Debtor pays $210 per month for vehicle insurance.  The Debtor indicates that he

pays an average of $184 per month for gasoline, $291 per month for food, $139 per month for

car repairs, $63 per month for pet care, $75 per month for vacations, $110 per month for medical

and dental care, $27 per month for a friend's medical care, $29 per month for gifts, $25 per month for entertainment, $18 per month for vehicle taxes, and $82 per month for house repairs. In addition to these expense, the Debtor is paying $75 per month in back taxes to the IRS. The Debtor included in his expenses $482 for a mattress purchased in October, 2004. However, as there are no ongoing payments on that item, the court will not include such in the Debtor's monthly expenses. Additionally, the court has already accounted for the Debtor's private disability insurance payment. Therefore, the court finds that the Debtor's current monthly expenses are $3,671.

DISCUSSION

Section 523(a)(8) of the Bankruptcy Code provides as follows:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt...
> (8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor...

11 U.S.C. § 523(a)(8). At issue in this proceeding is whether excepting the Student Loans from discharge will impose an undue burden on the Debtor. To determine whether exception to discharge imposes an undue burden, the majority of courts apply the test set forth by the Second Circuit in In re Brunner. 831 F.2d 395 (1987). The Brunner test is a three-part test that requires a debtor to show:

> (1) that the Debtor cannot maintain, based upon current income and expenses, a minimal standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

Id. at 396. The Fourth Circuit has adopted the Brunner test. See In re Ekenasi, 325 F.2d 541

(2003).  In order for the Student Loans to be discharged, the Debtor must show that he meets each prong of the <u>Brunner</u> test by a preponderance of the evidence.  <u>Grogan v. Garner</u>, 498 U.S. 279, 291 (1991).   Failure to satisfy one prong of the Brunner test will result in the Student Loans being excepted from discharge.  <u>In re Faish</u>, 72 F.3d 298, 306 (3d Cir. 1995).  Although the court recognizes that it is not required to do so, given the facts of this case, the court will examine each prong of the <u>Brunner</u> test independently and without regard to the outcome under the other prongs of the test.

    <u>1.  The Debtor has failed to show that he could not maintain a minimal standard of living if required to repay the Student Loans.</u>

    The first prong of the <u>Brunner</u> test requires the court to determine whether the Debtor can maintain a minimal standard of living while paying the Student Loans.  When determining whether the Debtor can maintain a minimal standard of living while repaying the Student Loans, the court must evaluate the Debtor's income and expenses.  If the Debtor has maximized his income and minimized his expenses but still cannot maintain a minimal standard of living while repaying the Student Loans, then the Debtor will satisfy this prong of the <u>Brunner</u> test.  <u>Ekenasi</u>, 325 F.3d at 546; <u>In re Perkins</u>, 318 B.R. 300, 305 (Bankr. M.D.N.C. 2004).

    Initially, the court notes that the Debtor has taken steps to maximize his income.  After graduating from ASU, the Debtor conducted an exhaustive job search and, after failing in that search, returned to school to receive further training.  The Debtor is currently employed and earns $2,255 per month from his employment.  Additionally, the Debtor has maintained a private disability insurance policy that further supplements his income.  As such, the court finds no evidence indicating that the Debtor has failed to maximize his income.

    However, the Debtor has failed to minimize his expenses.  The Debtor presented no evidence indicating that he had attempted to minimize his expenses.  Instead, the evidence

presented by the Debtor shows signs of a lifestyle that in no way could be described as minimal. The Debtor, a single person with no dependants, owns a three bedroom home and makes substantial monthly mortgage payments. Further, the Debtor pays additional amounts on his mortgage each month in order to shorten the repayment period. In total, the Debtor pays $912 per month for housing. This amount is greater than what a single person needs to obtain minimal housing. The Debtor owns three vehicles, including one purchased after this petition was filed. The Debtor's vehicle payments total over $1,000 per month. The Debtor offered no evidence that these vehicles were required for the Debtor's employment or otherwise constituted necessities. Rather, the Debtor testified that he only used his motorcycle for stress relief. Given the absence of evidence showing a need for these three vehicles, the court finds that the Debtor's $1,024 vehicle payments are greater than the minimal amount needed for this Debtor to have adequate transportation. The Debtor's home and vehicle payments are more than enough for the court to conclude that the Debtor has failed to minimize his expenses. However, in addition to these expenses, many of the Debtor's other expenses are above that of minimal lifestyle. The Debtor voluntarily pays his ex-wife's car insurance premiums. While undoubtedly a generous gesture, this is not an expense of an individual living minimally. Further, the Debtor's budget contains expenses for satellite television service, broadband internet service, pet care, vacations, gifts, and entertainment. In order to meet the arduous test set forth in Brunner, the Debtor would have to eliminate these expenses. See, e.g., In re Dillon, 189 B.R. 382, 386 (Bankr. W.D. Va. 1995); In re Wardlow, 167 B.R. 148, 151 (Bankr. W.D. Mo. 1993). Therefore, because the Debtor could substantially reduce his housing, vehicle, vehicle insurance, television, internet, vacation, gift, and entertainment expenses while still maintaining a minimal lifestyle, the court finds that the Debtor fails to meet the first prong of the Brunner test.

    2.  The Debtor has not shown that conditions exist that suggest that his efforts to repay the Student Loans have a certainty of hopelessness.

    The second prong of the <u>Brunner</u> test requires the court to determine if circumstances exist that would make the Debtor unable to repay the Student Loans during a significant portion of the repayment period.  This prong of the test is met when circumstances suggest a "certainty of hopelessness" that would prevent the repayment of a student loan.  <u>In re Robertson</u>, 999 F.2d 1132, 1136 (7th. Cir. 1993) (citations omitted).  In this case, the Debtor has failed to prove by a preponderance of the evidence that a "certainty of hopelessness" exists that would prevent his repayment of the Student Loans.  Rather, it is likely that the circumstances that presently allow the Debtor to repay the Student Loans would continue during the repayment period.  The Debtor works for the North Carolina state government.  As such, his salary is unlikely to decrease while he continues in this job.  Instead, the Debtor's salary will increase as he gains experience.  Further, given his employment with the state, the Debtor faces a relatively low risk of being laid off from his job.  In addition to these facts, the Debtor still possesses his degrees from ASU.  Despite his lack of success in his previous employment search, there are no facts in front of the court that suggest that future attempts to gain employment in public administration are certainly hopeless.  Rather, if the Debtor maintains his current employment, it is likely that he will be a more desirable employee.  Given the facts that the Debtor's current employment is relatively secure and that improved employment in the future is not unlikely, the court cannot find that circumstances suggest a certainty of hopelessness that would prevent the Debtor from repaying the Student Loans.  Therefore, the Debtor fails to meet the second prong of the <u>Brunner</u> test.

    3.  The Debtor has not made a good faith effort to repay the Student Loans.

    The final prong of the <u>Brunner</u> test requires the court to determine if the Debtor has made a good faith effort to repay the Student Loans.  When determining whether a debtor has made a

good faith effort, courts consider a myriad of factors.  See In re Hall, 293 B.R. 731, 736 (Bankr.

N.D. Ohio 2002) (indicating a non-exhaustive list of factors many courts consider when

determining good faith).  As part of their consideration, courts consistently review a debtor's

payment history with regard to a student loan.  See Id.  This court notes that, at a minimum, for a

debtor to meet the third prong of the Brunner test, the debtor must have made payments on the

loans in question when the debtor could have afforded to do so.  In re Thompson, 329 B.R. 145,

181 (Bankr. E.D. Va. 2005).  Since the beginning of his employment with the NCDOT in 2003,

the Debtor has received his salary, payments from a private disability insurance policy, and

payments from the SSA.  Despite receiving over $4,000 dollars in monthly net income, the

Debtor has failed to make a single payment on the Student Loans.  Instead, the Debtor made

additional payments on his home mortgage and incurred significant vehicle payments.  Under

these circumstances, the court cannot find that the Debtor has made a good faith effort to repay

the Student Loans.  Therefore, the Debtor fails to meet the third prong of the Brunner test.

CONCLUSION

The Debtor has failed to meet each prong of the <u>Brunner</u> test.  The Debtor has failed to show that he could not maintain a minimal standard of living while repaying the Student Loans. The Debtor has failed to show a certainty of hopelessness with regard to the repayment of the Student Loans.  Finally, the Debtor has failed to show that he made a good faith effort to repay the Student Loans.

THEREFORE, it is ORDERED, ADJUDGED, AND DECREED that the Student Loans shall not be discharged pursuant to 11 U.S.C. § 523(a)(8).

# SERVICE LIST

John A. Meadows
2596-C Reynolda Road
Winston-Salem, NC 27106

Anna Shedden Gorman
2300 One Wachovia Center
301 S. College Street
Charlotte, NC 28202

Edwin H. Ferguson, Jr.
P.O. Box 444
Concord, NC 28025-0444

Steven Paul Hambacher
2037 Hogan Point Drive
Winston-Salem, NC 27127-8817

Michael D. West
P. O. Box 1828
Greensboro, NC 27402